FILED
2012 May-02  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

NUGEN INTERNATIONAL, INC.  )
             Plaintiff,  )
               )
vs.  )      CASE NO. CV 11-J-1208-NE
               )
DONALD W. KENNEDY and  )
JANICE G. KENNEDY,  )
             Defendants.  )

## MEMORANDUM OPINION

Pending before the court are cross motions for summary judgment and related pleadings: first, plaintiff NuGen International, Inc.'s  motion for partial summary judgment (doc. 66), a brief (doc. 67) and evidentiary submissions (doc. 68) in support thereof, defendants' response and evidentiary submissions (docs. 78 and 79) in opposition thereto, and plaintiff's reply (doc. 81); and second, defendants Donald and Janice Kennedy's motion for summary judgment (doc. 73), a brief (doc. 74) and evidentiary submissions (doc. 75) in support thereof, plaintiff's response in opposition thereto (doc. 77), and defendants' reply (doc. 80). Plaintiff alleges seven counts in its Complaint (*see* Compl. at  ¶¶ 17-45) but moves for summary judgment only on four: Breach of Contract (Count I), Action for Money Had and Received (Count II), Action for Money Lent (Count III), and Action on Promissory Note

(Count IV). Defendants move for summary judgment on all of plaintiff's counts. Because both motions are grounded in the same underlying facts, the motions have been consolidated for adjudication and are addressed together below.

## Factual Background

The pertinent, material, undisputed facts are as follows:

On or about June 27, 2006, defendant Donald Kennedy and several family members ("the Kennedy Family") entered into a Stock Purchase Agreement to purchase forty percent of the shares of the stock of Pharmaceutical Medical Supply, Inc. ("PMSI") and Direct Pharmaceutical, Inc. (together, "the Corporations") for the payment of $500,000 (Compl. ¶ 7 and Ex. A; Ex. 2 (doc. 68) at 56). Jim Floyd, nephew of defendant Janice Kennedy, required defendant Donald Kennedy to obtain $500,000 in "startup capital" for a business line of credit (Ex. 2 (doc. 68) at 62–64). It was suggested that a loan of $500,000 might be obtained from Tracy Nguyen for this "startup capital" (*Id.* at 62). Upon contact by defendant Donald Kennedy, Nguyen advised that she did not have $500,000, but that she would search for a lender (*Id.* at 62–63, 72).

On September 7, 2006, defendant Janice Kennedy wrote Jim Floyd: "Picked up the [promissory] note form yesterday to fill out and get to Tracy [Nguyen] for the $500,000 we are borrowing . . . and putting up as our portion of the start-up capital

needed in our new-found business venture together [with the Corporations]" (Ex. 8 (doc. 68); Ex. 3 (doc. 68) at 54–55). On September 8 or 9,[1] defendants signed a "Promissory Note" (the "Promissory Note") as personal guarantors and submitted it to Nguyen, authorizing her to shop for a prospective lender of $500,000 (Compl. ¶ 11 and Ex. B; Def. Ex. 2 (doc. 78) at 72:6–7; Pl. Ex. 3 (doc. 68) at 65, 76). The Promissory Note was submitted with a cover letter which stated "Here is the Promissory Note as agreed. We did not know who the 'pay to the order of' should be. You may fill that out. . . . Thank you very much for your help in our new business venture." (Ex. 10 (doc. 68); Ex. 3 (doc. 68) at 65).

There were no markings on the Promissory Note anywhere suggesting it was a "draft" document (Ex. 2 (doc. 78) at 111). When defendant Donald Kennedy was asked in deposition if "the purpose of you signing the [Promissory Note] was to persuade . . . a perspective investor to give you the five hundred thousand dollars," he replied "Yes, I guess that's right" (Ex. 2 (doc. 68) at 97; *see also id.* at 62, 96–97). The Promissory Note pledged as collateral property lying in Madison County, Alabama, (the "Collateral") (Compl. ¶ 11 and Ex. B). The Promissory Note stipulated that it would mature on March 9, 2007 (*See id.*).

---

[1] There is a slight discrepancy as to which date the "Promissory Note" was faxed to Nguyen; it is dated September 9, but defendant Donald Kennedy believes it may have been faxed on September 8. *See* Ex. 3 (doc. 68) at 65.

Upon receipt of the Promissory Note and cover letter, Nguyen asked her son, Jimmy Ngo, if he or his business, NuGen International, Inc., would loan $500,000 to the Kennedys; plaintiff NuGen International, Inc. agreed to do so upon review of the written terms of the Promissory Note (Ex. 1 (doc. 68) at 130, 137). On September 12, 2006, a facsimile was transmitted to NuGen International providing routing information and stating "wiring instructions to Renasant Bank for credit to PMSI" (Ex. 12 (doc. 68); Ex. 3 (Doc. 68) at 83–84). On or about September 18, 2006, as instructed in the September 12 wiring instructions, plaintiff caused $500,000 to be wired to Renasant Bank for the benefit of defendants pursuant to a document entitled "Promissory Note" signed by "Don Kennedy" and "Jan Kennedy" (Compl. ¶ 11–12 and Ex. B; Ex. 1 (doc. 68) at 161, 170–71; Ex. 14 (doc. 68) at 5). Once received, the funds were immediately utilized (*see* Ex. 14 (doc 68) at 5).

On December 11, 2006, Jim Floyd and the Kennedy family decided to part ways, and a member of the Kennedy Family asked Floyd for a paid receipt on the Promissory Note executed by Defendants (Ex. 2 (doc. 68) at 77; Ex. 4 (doc. 68) at 115). On or about December 28, 2006, defendants became aware that the $500,000 had not been repaid (Ex. 3 (doc. 68) at 102).

In a letter dated September 10, 2007, plaintiff demanded payment by defendants of the principal loan of $500,000, plus interest (Compl. ¶ 13 and Ex. C).

4

In a letter dated September 19, 2007, counsel for defendants responded by disputing the validity of the debt (Compl. ¶ 14 and Ex. D). In November 2007 defendants mortgaged the property pledged as collateral to the Promissory Note and received a loan of $403,035.00 from CapitalSouth Bank (Compl. ¶ 15 and Ex. E at 1–2; Ex. 2 (doc. 68) at 83; Ex. 3 (doc. 68) at 117–18; Def. Br. in Resp. to Pl. Mot. (doc 78) at ¶ 29). No repayment on the loan has ever been made (Compl. ¶ 16).

## **Standard of Review**

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 1355–56 (1986). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain

a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). "'The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case . . . . A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

## Legal Analysis

### I. Breach of Contract Claim (Count I)

Plaintiff is entitled to summary judgment on its breach of contract claim if defendants have breached a written promise to repay plaintiff. An Alabama plaintiff can establish a breach of contract claim by showing "(A) the existence of a valid contract binding the parties in the action; (B) his own performance under the contract; (C) the defendant's nonperformance; and (D) damages." *Southern Medical Health Sys., Inc. v. Vaughn*, 669 So.2d 98, 99 (Ala. 1995). A valid contract exists under Alabama law if plaintiff can demonstrate "an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Ex parte Grant*, 711 So. 2d 464, 465 (Ala. 1997).

The cover letter from defendant Jan Kennedy to Tracy Nguyen stated: "Here is the Promissory Note as agreed." Ex. 10 (doc. 68). This Promissory Note establishes a valid offer. Plaintiff validly accepted the offer to be defendants' lender when its name was filled in on the "pay to the order of" section pursuant to defendant Janice Kennedy's instructions. *See* Exs. 10 & 11 (doc. 68). Valid consideration is also present. As the United States Supreme Court, in a case arising in Alabama, has stated, "[e]very negotiable promissory note, even if not purporting to be 'for value received,' imports a consideration. And the indorsement of such a note is itself prima facie

7

evidence of having been made for value." *Moses v. National Bank of Lawrence County*, 149 U.S. 298, 302 (1893) (internal citations omitted). Further, the Alabama Supreme Court has held that "[t]he note itself is 'prima facie evidence of sufficient consideration for the execution thereof, and the burden of proof is on the defendant to show there was no consideration.'" *Seier v. Peek*, 456 So. 2d 1079, 1081 (Ala. 1984) (quoting *Day v. Ray E. Friedman & Co.*, 395 So. 2d 54, 56 (Ala. 1981)). Here, the Promissory Note specifically states "FOR VALUE RECEIVED," and defendants voluntarily endorsed it. *See* Ex. 10 (doc. 68); Ex. 2 (doc. 78) at 76:21–23. Though defendants argue that they did not personally receive the $500,000 loan, and therefore no consideration exists (*see* Def. Br. in Resp. to Pl. Mot. for Partial Summary Judgment (doc. 78), at p. 4, ¶ 12; p. 10, ¶ 13; pp. 16–18),[2] it is long settled under Alabama law that "consideration sufficiently exists or is implied if it arises from any act of the plaintiff from which the defendant *or a third party* at defendant's instance derived a pecuniary benefit, if such act is performed by the plaintiff to the desired

---

[2] Throughout their briefs, defendants protest to the effect that the Promissory Note was just a draft, and "was never finalized." Def. Br. in Resp. to Pl. Mot. for Partial Summary Judgment (doc. 78), at 21. Defendants' attempts to introduce extraneous information surrounding the negotiation of the Promissory Note as evidence of their subjective intent are, in effect, an attempt to "explain . . . [or] vary" the Promissory Note's terms, and are a clear violation of the parol evidence rule. *See Hartford Fire Ins. Co. v. Shapiro*, 117 So. 348, 352 (Ala. 1960) ("Where there exists between the parties a written contract, the authorities are in agreement that parol evidence cannot be received to explain, contradict, vary, [add] to, or subtract from its terms.") (additional citations omitted).

end, with expressed or implied assent of the defendant." *Christie v. Durden*, 88 So. 667, 668 (Ala. 1921) (emphasis supplied). As the facts establish, plaintiff agreed to loan $500,000 at 18% interest on defendants' behalf to PMSI for the "startup capital" defendants sought from plaintiff as lender. *See* Ex. 1 (doc. 68) at 161, 170-71; Exs. 13 and 14 (doc. 68). Plaintiff's wiring of the money is sufficient consideration because a third party (PMSI) received a pecuniary benefit bargained for as part of the Promissory Note between plaintiff and defendants. A valid contract was thus formed.

As to the remaining requirements of a breach of contract claim, the facts readily demonstrate that plaintiff performed under the contract; there is no dispute that $500,000 was wired to PMSI.  *See* Ex. 1 (doc. 68) at 161, 170-71; Exs. 13 and 14 (doc. 68). There is also no dispute that defendants have not performed under the contract; they do not dispute that plaintiff has not been repaid. *See* Ex. 3 (doc. 68) at 120–23). Finally, plaintiff has incurred damages: plaintiff lost both the principle amount of $500,000 and the expected 18% return on the investment by defendants' failure to perform under the Promissory Note, and defendants have mortgaged the property that collateralized the Promissory Note (*see id.* at 78–79).

In sum, no genuine issues of material fact exist with respect to this claim. Plaintiff is therefore entitled to summary judgment on Count I of its Complaint, the Breach of Contract claim. The court shall so rule by separate order.

9

## II. Action for Money Had and Received (Count II)

The Alabama Supreme Court has endorsed the proposition that "'[[a]n action for money had and received] is founded upon the equitable principle that no one ought justly to enrich himself at the expense of another, and is maintainable in all cases where one has received money under such circumstances that in equity and good conscience he ought not to retain it because in justness and fairness it belongs to another.'" *Jewett v. Boihem*, 23 So. 3d 658, 661 (Ala. 2009) (quoting Jenelle Mims Marsh & Charles W. Gamble, *Alabama Law of Damages* § 34:2 (5th ed. 2004)). The court further described Alabama law in this area as follows:

> "Whenever one person adds to the other's advantage in any form, whether by increasing his holdings or saving him from expense or loss, he has conferred a benefit upon the other." *Opelika Prod. Credit Ass'n v. Lamb*, 361 So. 2d 95, 99 (Ala. 1978). Moreover, "[i]t is not necessary . . . to prove that money belonging to the plaintiff was actually and physically given to, and received by the defendant, as it is sufficient to show that . . . the defendant has received the benefit *indirectly*." 42 C.J.S.  Implied Contracts § 19, at 27 (2007) (emphasis added). "'Often a person owes restitution for a benefit he received through entirely innocent behavior, and *even through a transaction in which he took no part*.'" *Pratt v. Watkins*, 946 F.2d 907, 909 (Temp. Emer. Ct. App.1991) (quoting Restatement (Second) of Restitution § 1(b), at 10 (Tent. Draft No. 1, 1983) (emphasis added)).

*Jewett*, 23 So. 3d at 661–62. Thus, where a plaintiff has made a voluntary payment

to a third party for the defendant's benefit, there is a right of action in money had and received if the defendant ratified the payment or initially caused the payment to be made. *See Shreve v. McGowin*, 42 So. 94 (Ala. 1904).

Here, the undisputed facts discussed *supra* establish that plaintiff loaned PMSI $500,000 in accordance with the terms of the Promissory Note and the instructions provided by defendants. In other words, defendants received the indirect benefit of plaintiff's loan, and, absent repayment of that loan, remain unjustly enriched thereby. Plaintiff is therefore entitled to summary judgment on Count II of its Complaint, an Action for Money Had and Received. The court will so rule by separate order.

## III. Action for Money Lent (Count III)

The elements of an action for money lent are (i) money was delivered to a defendant, (ii) the money was intended as a loan, and (iii) the loan has not been repaid. *See Mantiply v. Mantiply*, 951 So. 2d 638, 649 (Ala. 2006).

The facts discussed *supra* leave no doubt that these elements have been satisfied in this case. Plaintiff delivered money to PMSI at defendants' request in order to fulfill Jim Floyd's requirement that defendants procure "startup capital" prior to establishing their joint business venture. *See* Ex. 2 (doc. 68) at 62–64. As discussed *supra*, the Promissory Note demonstrates that this money was intended as a loan, and there is no dispute that the loan has not been repaid. Plaintiff is accordingly entitled

to summary judgment on Count III of its Complaint, an Action for Money Lent. The court shall so rule by separate order.

## IV. Action on Promissory Note (Count IV)

For over a century, Alabama courts have held that a promissory note is "prima facie" evidence of the "right to recover the face of the note [plus] interest." *Chilton Warehouse & Mfg. Co. v. Lewis*, 57 So. 100, 101 (Ala. Ct. App. 1911). *See also Nobles v. Bank of Eclectic*, 115 So. 13, 15 (Ala. 1927) ("the recitals in the face of the note are prima facie evidence of the intention of the parties thereto"). Based on the undisputed material facts, defendants contemplated, created, and executed a promissory note for $500,000 plus interest for the purpose of furnishing start-up capital in their business venture line of credit, plaintiff caused $500,000 to be paid based on the Promissory Note, and defendants have not repaid the debt plus interest as proscribed by the Promissory Note. Plaintiffs are entitled to repayment of their $500,000, loaned on defendants' behalf in September 2006, plus 18% interest per annum, prorated to the date of repayment. Plaintiffs are therefore entitled to summary judgment on Count IV of their Complaint, an Action on a Promissory Note. The court will so rule by separate order.

## Conclusion

Having considered the foregoing and finding that defendants have failed to

establish a genuine issue of material fact sufficient to allow this case to proceed to trial on these four counts, the court **ORDERS** that the plaintiff's motion for partial summary judgment (doc. 66) be **GRANTED**. The court further **ORDERS** that defendants' cross motion for summary judgment (doc. 73) be **DENIED**. The court shall so rule by separate order.

 **DONE** and **ORDERED** this 2nd day of May 2012.


_____
  INGE PRYTZ JOHNSON
  U.S. DISTRICT JUDGE